IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-02031-PAB-KLM

AVENUE CAPITAL MANAGEMENT II, LP, et al.,

    Plaintiffs,

v.

RICHARD F. SCHADEN, et al.,

    Defendants.

## MANAGER DEFENDANTS' MOTION TO DISMISS COMPLAINT

Richard F. Schaden, Richard E. Schaden, Frederick H. Schaden, Andrew R. Lee, Patrick E. Meyers, John M. Moore, Thomas Ryan, and Consumer Capital Partners LLC ("Manager Defendants"), by their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss Plaintiffs' Complaint:

### INTRODUCTION

In this case, two highly-sophisticated, multi-billion dollar distressed-debt investment funds, and their Cayman Island and Jersey Island affiliates, assert conclusory fraud claims against the former CEO and CFO of Quiznos ("Officer Defendants") based on forward-looking projections contained in materials documenting a corporate restructuring. Plaintiffs then seek to parlay those conclusory allegations into derivative "control," "aiding and abetting," and "conspiracy" claims against seven individuals, based on their status as members of QCE Holding LLC's ("QCEH") Board of Managers.

The Officer Defendants' concurrently-filed motion explains why Plaintiffs' underlying fraud claims must be dismissed, and the Manager Defendants adopt the arguments therein. But Plaintiffs'

effort to attach derivative liability to the Manager Defendants is fatally flawed in its own right. The Complaint does not demonstrate that *each* (let alone any) Manager Defendant prepared and disseminated the purportedly fraudulent projections, or actually knew about and substantially assisted the alleged fraud. As just one example, Plaintiffs concede that Richard E. Schaden left the Board months before the restructuring. At best, the Complaint demonstrates the Board of Managers collectively approved a restructuring transaction negotiated between Quiznos' lenders and management. This type of group pleading is not sufficient, especially in the context of claims based on fraud. The Manager Defendants' motion to dismiss should be granted with prejudice.

**FACTUAL ALLEGATIONS**

Plaintiffs are funds affiliated with Avenue Capital Management II, L.P. (collectively "Avenue") and Fortress Investment Group LLC (collectively "Fortress"). (Compl. ¶¶ 13-14, ECF No. 1.) They allege that the former CEO and CFO of Quiznos gave them overly optimistic projections that induced them in January 2012 to convert millions of dollars in loans into membership interests in the Company, and to inject an additional $150 million in capital. (*See id.* ¶¶ 22-23, 51-52, 69-76.)

In July 2011, and due to Quiznos' declining performance, the company breached certain loan covenants. (Compl. ¶ 56.) Accordingly, Plaintiffs and other lenders formed *ad hoc* groups to consider restructuring the Company's debt obligations. (*Id.* ¶ 59.) In December 2011, the lenders elected to proceed with an out-of-court restructuring, which was documented by: (a) an Offering Memorandum; (b) a Restructuring Support Agreement; (c) a Subscription Agreement; and (d) Assignment, Assumption & Release Agreement.[1] (*Id.* ¶¶ 61, 68.)

---

[1] Plaintiffs refer to the documents evidencing the restructuring transaction in their Complaint, but do not attach them. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the

2

Plaintiffs allegedly proceeded with the out-of-court restructuring based on "misrepresentations" in the transaction documents. (Compl. ¶ 149.) According to the Complaint, QCEH's Board of Managers approved "the form, terms and provisions of, and the transactions contemplated by" the transaction documents. (*Id.* ¶ 141.) On that basis, and in direct contravention of their agreement to release all claims arising out of the restructuring, Plaintiffs allege the Manager Defendants are liable for: (1) violation of the Securities Exchange Act's "control" provision; (2) civil conspiracy; (3) and aiding and abetting fraud. (*Id.* ¶¶ 27-30, 35-39, 183-189, 190-194, 200-205.)

## LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain enough allegations of fact, taken as true, "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). No weight is given to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

---

(continued…)

plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1116 n.2 (10th Cir. 1997) (considering, on a motion to dismiss, Registration Statement referred to but not incorporated in the complaint). Accordingly, the Court may consider the documents evidencing the restructuring transaction, including the Offering Memorandum, Restructuring Support Agreement, Subscription Agreement, and Assignment, Assumption & Release Agreement without converting the motion to one under Rule 56. *See* Declaration of Nathaniel P. Garrett. All "Exhibit" citations refer to the Exhibits attached to the Garrett Declaration.

## ARGUMENT

### I. THE COMPLAINT IS BARRED BY PLAINTIFFS' RELEASES.

As part of the restructuring, Defendants forfeited their financial interest in Quiznos and the Manager Defendants resigned their positions. The only consideration Defendants received was a release, contained in an Assignment, Assumption and Release Agreement governed by New York law. (Ex. 5 p. 5.) Under New York law, when a release is executed "in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that if 'the language of the release is clear … the intent of the parties [is] indicated by the language employed.'" *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977). And when the release language is of broad and general effect, "the release is to be construed most strongly against the releasor." *Middle E. Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 907(2d Cir. 1987) (citation omitted). Here, Plaintiffs *twice* expressly released all claims related to the restructuring.

### A. The Section 3(b) Release.

First, in § 3(b) of the Assignment Agreement, Plaintiffs agreed that Defendants "shall have no liability whatsoever" with regard to "any act or omission in connection with, or arising out of, the Restructuring and the transactions contemplated by the [Restructuring Support Agreement]." (Ex. 5 p. 5.) Section 3(b) expressly provided that this broad release "shall be in addition to, and not in limitation of, all other releases …." (*Id.*)

Recognizing that their claims indisputably arise out of alleged acts or omissions in connection with the restructuring, Plaintiffs argue that neither the Securities Exchange Act nor New York law permits parties to release "intentional wrongdoing." Defs.' Mot. to Dismiss at 5-6, *Richard F. Schaden v. Avenue Capital Mgmt. II, L.P. & Fortress Investment Grp., LLC*, No. 14-cv-02119 (D. Colo. Aug. 6, 2014) ("*Schaden Action*"), ECF No. 16. Plaintiffs are wrong on both accounts.

The Securities Exchange Act does not bar sophisticated parties, represented by counsel, from waiving all claims based on prior conduct in connection with the sale of a company. Section 29(a) provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder . . . shall be void." 15 U.S.C. § 78cc(a). But waiver is a "unilaterally accomplished" relinquishment of a known right; "[i]n contrast, the release here is the result of negotiations between parties of equal bargaining power." *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342 (9th Cir. 1992). Section 29(a) is inapplicable to the "*release* of a matured claim as opposed to an anticipatory *waiver* of any claim which might arise later" (*Mittendorf v. J. R. Williston & Beane, Inc.*, 372 F. Supp. 821, 834 (S.D.N.Y. 1974)), even if the releasing party did not discover the alleged securities violation before signing the agreement. *Petro-Ventures,* 967 F.2d at 1342.

In *Petro-Ventures*, the court held that "where a plaintiff has affirmatively acted to release another party from any possible liability in connection with a transaction in securities," section 29(a) does not apply. 967 F.2d at 1342; *see also Facebook, Inc. v. Pac. N.W. Software, Inc.*, 640 F.3d 1034, 1039 (9th Cir. 2011). The release at issue here is at least as broad as the one in *Petro-Ventures*, and § 3(b)'s language makes clear that these sophisticated Plaintiffs were seeking to "establish[] a general peace" and avoid an in-court bankruptcy in connection with their effort to take control of Quiznos. 967 F.2d at 1342. Under these circumstances, section 29(a) does not render the release void.

Similarly, New York law expressly authorizes and enforces releases negotiated among sophisticated parties that bar known and unknown state law fraud claims arising out of financial transactions. *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (2011). If the rule were different, "no party could ever settle a fraud claim with any finality." *Id.* at

5

276. Although courts have cited public policy reasons in refusing to enforce agreements that purport to immunize defendants from *future* intentional misconduct, § 3(b) acted to bar claims based on conduct occurring *prior* to the close of the restructuring and the execution of the release agreements. As such, the releases are enforceable and mandate dismissal of the claims alleged.

### B. The Section 3(a) Release.

Second, in § 3(a) of the Assignment Agreement (Ex. 5 pp. 2-4), Plaintiffs (as equityholders of QCE Parent) and Defendants (as equityholders and managers of QCEH) agreed, in relevant part, to:

> unconditionally and irrevocably release each other, individually and collectively, from any and all claims . . . in any way related to the Releasing/Released Parties or arising out of the Restructuring, except that … (3) the foregoing releases shall not apply to claims arising from unlawful acts committed by a Releasing/Released Party….

Section 3(a), and its virtually-identical counterpart in the Offering Memorandum (*see* Ex. 1 p. 79), bar all claims arising in whole or in part upon actions taken by Defendants in their capacity as managers and equityholders of QCEH. Plaintiffs' fraud claims arise directly from such purported actions. As New York's highest court held in materially indistinguishable circumstances, the release "indicates an intent to release defendants from fraud claims … unknown at the time of contract." *Centro*, 17 N.Y.3d at 277. If Plaintiffs "did not wish to forgo suing on a fraud claim they might discover in the future, these sophisticated and well-counseled entities should have insisted that the release be conditioned on the truth of the financial information provided by defendants." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 76 A.D.3d 310, 320-21 (N.Y. App. Div. 2010).

Acknowledging the facial application of § 3(a) to their claims, Plaintiffs construe the "unlawful acts" carve-out so broadly that the exception swallows the rule. Defs.' Mot. to Dismiss at 4-5, *Schaden Action*, ECF No. 16. Plaintiffs take the position that "unlawful" means anything

impermissible under the law, civil or criminal. But if that were the case, the parties' mutual release would be meaningless; a release of only lawful conduct is no release at all. Releases, like contracts, should not be read to render provisions nugatory. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).

The only way to give effect to the mutual release is to adopt the meaning of "unlawful" recognized by Black's Law Dictionary: "[c]riminally punishable." Black's Law Dictionary (9th ed. 2009). The term "unlawful act" is "commonly understood not only by lawyers, but by lay persons, to mean violations of criminal statutes." *Canada Life Assur. Co. v. Pendleton Mem'l Methodist Hosp.*, No. 98-3469, 1999 U.S. Dist. LEXIS 6042, at *11 (E.D. La. Apr. 21, 1999). That is precisely the reading adopted by Plaintiffs in other parts of the transaction documents. QCE Parent's Operating Agreement uses the term "unlawful" solely in the context of "any criminal action or proceeding." (Ex. 2 p. 22.) Words in writings that form part of a single transaction are to be interpreted harmoniously. *Cohanzick Partners, L.P. v. FTM Media, Inc.*, 120 F. Supp. 2d 352, 359 (S.D.N.Y. 2000). And interpreting "unlawful" to mean conduct found to be "criminally punishable" preserves the parties' intent to release claims arising from all but the most culpable conduct.

Plaintiffs' reliance on the exception for "unlawful" acts is particularly ill-fitting when applied to their derivative securities claim against the Manager Defendants. Plaintiffs have *not* alleged the Manager Defendants involvement in the alleged underlying fraud. Rather, they seek to hold the Manager Defendants secondarily liable as "control" persons. Defendants' mere status as board members—the basis for Plaintiffs' claim—cannot be characterized as "unlawful" except under the most expansive, and ultimately meaningless, definition of the term.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT.

### A. Plaintiffs' Derivative Section 20(a) Claim Falls with the First Count.

Plaintiffs' only federal claim against the Manager Defendants is based on the control person provision of the Exchange Act, 15 U.S.C. § 78t.  To state a claim, Plaintiffs must establish (1) a primary violation of the securities laws and (2) "control" over the primary violator by the alleged controlling person.  *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998).  Because Plaintiffs' primary claim fails for the reasons explained in the Officer Defendants' motion to dismiss, the Court also should dismiss Plaintiffs' derivative control claim.  *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1271 (10th Cir. 2001); *In re Crocs Sec. Litig.*, 774 F. Supp. 2d 1122, 1155 (D. Colo. 2011).

### B. Plaintiffs Fail to Allege the Element of Control.

The Complaint also fails to adequately allege the Manager Defendants "controlled" the restructuring transaction upon which Plaintiffs' underlying fraud claim is based.  To allege a violation of Section 20(a), a plaintiff must plead facts from which it can be reasonably inferred that the defendant was a control person.  *Maher,* 144 F.3d at 1306.  "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405 (2008).  It is well established that an individual's status as a director, without more, is not enough to trigger liability under § 20(a).  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003).  Dismissal is required where the plaintiff fails to allege facts, with sufficient particularity, showing that the director actually participated in the operations of the corporation and possessed the power to control *the specific transactions or activities* upon which the primary violations are

8

predicated. *Wenneman v. Brown*, 49 F. Supp. 2d 1283, 1290 (D. Utah 1999) (citing *First Interstate Bank, N.A. v. Pring*, 969 F.2d 891, 898 (10th Cir. 1992)).

### 1. Richard E. Schaden

Plaintiffs concede, as they must, that Rick Schaden resigned from QCEH's Board of Managers months *before* the 2012 transaction. (Compl. ¶¶ 29, 61.) Because Plaintiffs' securities fraud claims are based on the alleged preparation and dissemination of the restructuring documents in January 2012, "for [Rick Schaden] to be liable as a controlling person in this case, he must have had the power to control [the Officer Defendants] at the time the [restructuring transaction documents were] issued." *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 397 (11th Cir. 1996).

Plaintiffs, however, do not allege any facts showing that Rick Schaden had the power to control the Officer Defendants in January 2012. Plaintiffs do not allege that he created the purportedly fraudulent projections, approved the projections, or was even aware of them. The most they can muster is that he allegedly continued to receive board presentations after he resigned "to keep him informed" and consulted "regarding the Company's financial position and future prospects." (Compl. ¶ 63.) But the kind of consulting role described in Plaintiffs' Complaint does not rise to the level of "control" required by § 20(a) absent evidence of day-to-day control over the Company. *In re Jiangbo Pharms., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1260 (S.D. Fla. 2012).

Thus, Plaintiffs' theory of control hinges on their allegation that Rick Schaden was an indirect equityholder in Quiznos. (Compl. ¶ 185.) Critically, however, Plaintiffs never allege that Rick Schaden was a majority owner of Quiznos at the time of the transaction (nor could they). Plaintiffs instead allege that "Rick *and* Richard Schaden," in combination, were the majority equity owners of Quiznos. (*Id.*; *see also id.* ¶¶ 27, 33.) But Rick Schaden cannot be denominated a "control" person merely because he, in combination with a family member, controlled a majority of the

company.  *See Wilson v. Al McCord, Inc.*, 858 F.2d 1469, 1474-75 (10th Cir. 1988) (holding wife owning 49% of stock was not control person despite fact that her husband held the other 51%). And under the heightened pleading standard of the PSLRA, Plaintiffs cannot strategically lump different defendants together to generate a cause of action.  *See In re Cryomedical Scis., Inc. Sec. Litig.*, 884 F. Supp. 1001, 1020 (D. Md. 1995).  In the absence of specific factual allegations that Rick Schaden was active in the day-to-day affairs of Quiznos or that he exercised specific control over the preparation and release of the projections, his minority equity interest does not allow liability under § 20(a).  *E.g.*, *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1067 n.13 (9th Cir. 2000); *Theoharous v. Fong*, 256 F.3d 1219, 1227-28 (11th Cir. 2001) (defendant's minority interest did not prove power to control general business affairs or the specific misconduct); *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 913 (S.D. Ohio 2008).[2]

### 2.  Consumer Capital Partners LLC

Plaintiffs' control allegations against Consumer Capital Partners LLC ("CCP") have even less substance.  Plaintiffs allege that QCEH was majority controlled by QCE Finance and Cervantes Master LLC.  (Compl. ¶ 19.)  In turn, Plaintiffs allege that QCE Finance and Cervantes Master LLC "were subsidiaries and/or affiliates" of CCP.  (*Id.* ¶ 20.)  But "the mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient" to sustain a § 20(a) claim absent an allegation that "the parent or affiliate possessed some degree of control over … the fraud."  *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011).  To be sure, Plaintiffs summarily allege that CCP "was the instrumentality and conduit by and through which the Schadens exercised direct and indirect control over Quiznos."  (Compl. ¶ 21.)  But the Complaint lacks any *facts* to support

---

[2] For the same reason, Plaintiffs' theory that Richard F. Schaden can be held liable under § 20(a) due to his equity interest in the company fails.  (*See* Compl. ¶ 185.)

that allegation. "To allege control sufficiently, a plaintiff must plead facts from which it can reasonably be inferred that the defendant was a control person." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1148-49 (D. Colo. 2005).

### 3. Board of Manager Defendants

Plaintiffs' control allegations regarding the Board of Manager defendants fail as well because the Complaint does not explain how they controlled or influenced the day-to-day operations of the Company or the restructuring at issue. Plaintiffs summarily allege that QCEH's Board of Managers "directly controlled and operated the entirety of the Quiznos entities." (Compl. ¶ 17.) But the mere allegation that a person was a member of a board of managers or directors is insufficient under section 20(a) without "a specific allegation demonstrating control or influence over the wrongdoing or over the day-to-day business of the company." *Grubka v. WebAccess Int'l, Inc.*, 445 F. Supp. 2d 1259, 1268 (D. Colo. 2006). In short, Plaintiffs must allege specific facts showing that *each* defendant "individually exerted control or influence" over the day-to-day operations of the company and possessed the power to control the restructuring transaction at issue. *Adams*, 340 F.3d at 1108; *see also Kimmel v. Labenski*, No. 85-cv-0804, 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988) (plaintiff "is required to allege specifically how each director 'possessed the power to direct or cause the direction of the management'") (citation omitted).

Plaintiffs allege that a Special Committee of the Board was briefed on the Company's current and projected future results, and approved the form, terms and provisions of the restructuring transaction. (Compl. ¶ 141.) Yet that allegation does "not go beyond the run-of-the-mill duties of a director of a large corporation." *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 43 (D. Mass. 2002). Merely reviewing and approving an allegedly fraudulent statement "does not rise to a level of supervision or participation sufficient for a § 20(a) violation." *Howard*, 228 F.3d at 1067 n.13; *see also*

*In re Action Indus. Tender Offer*, 572 F. Supp. 846, 853 (E.D. Va. 1983).  Likewise, Plaintiffs' conclusory allegation that the Managers had access to corporate information about the restructuring (Compl. ¶ 139) does "not demonstrate the day-to-day involvement with corporation affairs necessary to establish liability[.]"  *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242 (N.D. Cal. 1994).  Accordingly, Plaintiffs' § 20(a) claim against the Manager Defendants fails.

### III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING FRAUD.

Plaintiffs allege that the Manager Defendants aided and abetted the allegedly fraudulent statements contained in the Offering Memorandum.  (Compl. ¶¶ 200-05.)  To state a claim for aiding and abetting a common law fraud, a plaintiff must allege: (1) the existence of the primary fraud; (2) the aider and abettor's actual knowledge of the fraud; and (3) substantial assistance by the aider and abettor.  *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1328 (S.D.N.Y. 1997).  Because Plaintiffs' direct fraud claim fails, Plaintiffs' derivative aiding and abetting claim must also be dismissed.  *See Morgan v. Prudential Grp., Inc.*, 81 F.R.D. 418, 425 n.6 (S.D.N.Y. 1978).  Further, Plaintiffs' Complaint does not plausibly allege that the Manager Defendants knew of and substantially assisted the alleged fraud.

#### A.  Richard E. Schaden

Plaintiffs' aiding and abetting claim against Rick Schaden fails because the Complaint does not allege facts establishing that he "had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct."  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010).  "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one."  *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) (citation omitted).

Plaintiffs summarily allege that Rick Schaden "was intimately involved with the Transaction" because he communicated with the Officer Defendants and QCEH's Board. (Compl. ¶ 62.) But despite having had unfettered access to Quiznos' files, email system and employees for the past several years, Plaintiffs fail to identify any documents or facts demonstrating that Rick Schaden was told of a purported "gap" in the projections or *knew* the challenged representations were false. The Complaint does not approach the specificity required by Rule 9(b). *See In re AHT Corp.*, 292 B.R. 734, 746 (S.D.N.Y. 2003) (that co-founder and 21% shareholder of corporation continued to work for company after resigning from board of directors was insufficient to raise inference as to his knowledge of fraudulent misrepresentations allegedly made during merger negotiations).

Plaintiffs also fail to allege that Rick Schaden substantially assisted the purported fraud. "In the context of aiding and abetting, where the primary violations consist of either misrepresentations in, or omissions from, a document, the substantial assistance must relate to the preparation or dissemination of the document itself." *Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989). There is no allegation that Rick Schaden assisted in either the preparation or dissemination of the purportedly fraudulent statements.

### B. Consumer Capital Partners LLC

Plaintiffs' aiding and abetting fraud claim against CCP fails because the Complaint does not allege that CCP substantially aided the purported fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [fraud or breach of fiduciary duty] to occur." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007) (alteration in original) (internal quotation marks omitted). Plaintiffs do not allege that CCP took *any* steps to assist the Officer Defendants in disseminating the allegedly false statements.

### C.  Remaining Manager Defendants

Finally, the Complaint fails to allege that any of the Board of Manager defendants had actual knowledge of the purported fraud.  Where a plaintiff alleges that a document containing misrepresentations was prepared with the authority of all defendants, "plaintiffs must plead facts sufficient to establish how *each* defendant came to know that it contained misrepresentations at the time it was distributed."  *N. Valley Partners, LLC v. Jenkins*, 2009 WL 1058162, at *6 (N.Y. Sup. Apr. 14, 2009) (emphasis added).  Plaintiffs allege the Officer Defendants communicated their intent to pass "minimal cost increases" on to franchisees as a way to increase revenue and meet the Company's financial targets.  (Compl. ¶ 135.)  But there is nothing untoward about a corporation increasing prices to maintain profitability, and Plaintiffs provide no explanation for why knowledge of that fact supports a claim for aiding and abetting fraud.  Similarly, Plaintiffs allege the Manager Defendants "were aware of the importance of strong projections."  (*Id.* ¶ 80.)  Again, if that were a valid basis for aiding and abetting fraud, every director of every corporation would be liable.  Finally, Plaintiffs allege that certain managers were informed of a gap between the Company's projection model and the food cost estimate of an AFD employee.  (*Id.* ¶ 139).  Plaintiffs do not allege that Richard F. Schaden was informed of that fact, so their claim plainly fails as to him.  But even as to the remaining board members, Plaintiffs never explain how the directors' mere awareness of the AFD Food Model led them to know that the Officer Defendants were committing fraud.

### IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY.

In Count Three, Plaintiffs assert a claim for civil conspiracy against all defendants.  (Compl. ¶¶ 190-94.)  Under New York law, there is no independent cause of action for conspiracy to commit fraud.  *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986).  Rather, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an

14

otherwise actionable tort." *Id.* Because Plaintiffs' direct fraud claim fails, the civil conspiracy charge also must be dismissed. *See Linden v. Lloyd's Planning Serv., Inc.*, 299 A.D.2d 217, 218 (N.Y. App. Div. 2002).

Plaintiffs' civil conspiracy also fails on its own weight. Plaintiffs' conspiracy claim is predicated on allegations that the executive defendants met with certain members of the board to discuss the restructuring transaction. (Compl. ¶¶ 131, 135, 141.) This joint attendance at meetings to discuss the transaction "does not plausibly suggest the existence of a corrupt agreement." *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011). "What it suggests is merely that corporate [officers and directors] meet regularly to discuss corporate business." *Id.*

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted with prejudice.

Respectfully Submitted,

Dated: October 3, 2014

By: s/ Christopher Lovrien
Christopher Lovrien

Bruce S. Bennett
Nathaniel P. Garrett
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA  90071.2300
+1.213.489.3939 Telephone
+1.213.243.2539 Facsimile

Attorneys for Defendants
RICHARD F. SCHADEN, RICHARD E. SCHADEN, FREDERICK H. SCHADEN, ANDREW R. LEE, PATRICK E. MEYERS, JOHN M. MOORE, THOMAS RYAN, CONSUMER CAPITAL PARTNERS LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Allen.Lanstra@skadden.com
al.chua@skadden.com
Logan.Wayne@skadden.com
rebecca.isomoto@skadden.com
Thomas.Marks@skadden.com
bbennett@jonesday.com
kfloyd@jonesday.com
cjlovrien@jonesday.com
eytran@jonesday.com
ngarrett@jonesday.com
vdragalin@jonesday.com
dwake@shb.com
hhiatt@shb.com
pheeren@shb.com
ssumpter@shb.com
jdailey@akingump.com
dromani@akingump.com
sbaldini@akingump.com
nymco@akingump.com

                                            s/ Nathaniel P. Garrett
                                            Nathaniel P. Garrett
                                            Attorney for Defendants
                                            JONES DAY
                                            555 California Street, 26th Floor
                                            San Francisco, CA 94104
                                            +1.415.875.5731 Telephone
                                            +1.415.875.5700 Facsimile

                                            Attorneys for Defendants
                                            GREG MACDONALD, DENNIS
                                            SMYTHE