**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02031-PAB-KLM

AVENUE CAPITAL MANAGEMENT II, LP, et al.,

      Plaintiffs,

v.

RICHARD F. SCHADEN, et al.,

      Defendants.

---

## MOTION TO STRIKE JURY DEMAND AND ALLEGATIONS IN COMPLAINT

---

Defendants Richard F. Schaden, Richard E. Schaden, Frederick H. Schaden, Greg MacDonald, Dennis Smythe, Andrew R. Lee, Patrick E. Meyers, John M. Moore, Thomas Ryan, and Consumer Capital Partners LLC (collectively "Defendants"), by their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(f) and 39(a), hereby move to strike portions of Plaintiffs' Complaint:

### INTRODUCTION

In this case, two highly-sophisticated, multi-billion dollar distressed-debt investment funds, and their Cayman Island and Jersey Island affiliates, demand a trial by jury for claims based on alleged misrepresentations in forward-looking projections contained in the transaction documents associated with Quiznos' January 2012 restructuring. Defendants' concurrently-filed motions to dismiss set forth the reasons why Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim. In this motion, Defendants explain why Plaintiffs' jury demand, as well as certain immaterial and impertinent allegations regarding events that occurred years before the restructuring transaction at issue, should be stricken.

In the restructuring documents, Plaintiffs twice waived their right to a jury trial with respect to claims arising out of the transaction.  In the Tenth Circuit and generally, jury waivers are enforced except in exceptional circumstances not present here.  Plaintiffs are sophisticated investors who played an active role in negotiating the restructuring transaction documents, and knowingly and willingly waived their jury rights in two waivers written in capital letters.

Further, Plaintiffs' Complaint contains several immaterial and impertinent allegations that concern events wholly unrelated to the issues in this case.  In particular, Plaintiffs pepper their Complaint with allegations regarding past litigation and financial transactions that do not concern Plaintiffs and occurred more than 10 years before they filed this action.  The manifest purpose of these allegations is to impugn and prejudice Defendants publicly and before the factfinder, and should be stricken under Rule 12(f).

## BACKGROUND

Plaintiffs are funds affiliated with Avenue Capital Management II, L.P. (collectively "Avenue") and Fortress Investment Group LLC (collectively "Fortress").  (Compl. ¶¶ 13-14, ECF No. 1.)  They allege that former officers of the limited liability companies comprising the Quiznos brand gave them overly optimistic projections that induced them in January 2012 to convert millions of dollars in loans into membership interests in the Company, and to inject an additional $150 million in capital into the Company.  (*See id.* ¶¶ 22-23, 51-52, 69-76.)  Plaintiffs assert direct fraud claims against Quiznos' former CEO and CFO, as well derivative claims against seven individuals who served on the Board of Managers of QCE Holding LLC, and a holding company affiliated with several of them.  All of Plaintiffs' claims relate to the 2012 restructuring, the terms of which were set

forth in three documents:  (a) an Offering Memorandum; (b) a Restructuring Support Agreement ("RSA"); and (c) a Subscription Agreement.[1]  (*Id.* ¶¶ 1-11, 68.)

The restructuring documents contained two jury waiver provisions.  The first was contained in the RSA, which was signed by both Avenue and Fortress.  The RSA set "forth certain terms and conditions pursuant to which QCE Finance LLC … and all of its direct and indirect subsidiaries … will propose a restructuring … of the Company's outstanding obligations" to its investors.  (Ex. 3 p. 1.)  In paragraph 12 of the RSA, the parties "UNCONDITIONALLY WAIVE[D] TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING" under or arising out of or in connection with the Agreement.  (*Id.* p. 18.)

A jury waiver was also included in the Subscription Agreement, which contained Plaintiffs' commitment to purchase an interest in QCE Parent LLC.  Avenue signed the Subscription Agreement as the Purchasers' Representative.  (Ex. 4 p. 11.)  On behalf of Plaintiffs, Avenue agreed to "UNCONDITIONALLY WAIVE[] TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY."  (*Id.* pp. 23-24.)

---

[1] Plaintiffs refer to these documents in their Complaint, but do not attach them.  (*See* Compl. ¶¶ 67-68, 71, 73, 75, 141, 150-56, 169.)  "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim," a defendant may submit an indisputably authentic copy to the court without converting a Rule 12 motion to one for summary judgment.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1116 n.2 (10th Cir. 1997) (considering, on a motion to dismiss, Registration Statement referred to but not incorporated in the complaint).  Accordingly, the Court may consider the transaction documents attached as exhibits to the concurrently-filed Declaration of Nathaniel P. Garrett.

ARGUMENT

## I.   PLAINTIFFS CONTRACTUALLY WAIVED THE RIGHT TO A JURY.

The jury demand contained in the Complaint must be stricken because it violates Plaintiffs'

express agreement to waive trial by jury.  In particular, Plaintiffs contractually waived the right to a

jury trial for any legal action or proceeding arising out of, relating to, or connected with the January

24, 2012 restructuring transaction upon which Plaintiffs' claims are based.

### A.   Legal Standard

The right to a jury trial in federal court is governed by federal law.  *Telum, Inc. v. E.F. Hutton*

*Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988).  In federal court, "[t]he law is clear that the right to a

jury trial can be contractually waived." *Cellport Sys., Inc. v. Peiker Acustic GMGH & Co.*, 847 F. Supp.

2d 1293, 1303 (D. Colo. 2012).  Agreements waiving the right to trial by jury are neither illegal nor

contrary to public policy.  *Telum*, 859 F.2d at 837.  Thus, a contractual jury waiver provision is

enforceable if made knowingly and voluntarily.  *See Hulsey v. West*, 966 F.2d 579, 581 (10th Cir.

1992).  Courts in this district have considered a number of factors when determining whether an

individual or entity has entered into a jury waiver knowingly and voluntarily, including:  (1) the

conspicuousness of the provision; (2) the level of sophistication and experience of the parties

entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative

bargaining power of each party; and (5) whether the waiving part was represented by counsel.

*Moreno v. Qwest Corp.*, No. 13-cv-00103-RM-MEH, 2013 WL 2444720, at *2 (D. Colo. June 5, 2013)

(citing cases).   While a jury trial waiver may be enforced even if not all factors are satisfied, in this

case all five factors support enforcement of the parties' waiver.  *See id.*

4

### B.   The Jury Waivers Are Conspicuous.

Plaintiffs are parties to two separate agreements containing conspicuous waivers of any right

to trial by jury.  Courts in this circuit have found jury trial waivers conspicuous so long as they are

"in the normal print size of the contract." *Telum*, 859 F.2d at 837; *Rasure v. Sitter*, No. 06-cv-01522-

ZLW-BNB, 2007 WL 4458119, at *2 (D. Colo. Dec. 11, 2007) (same); *Rocky Mountain Chocolate*

*Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at *7 (D. Colo. Nov. 30,

2007) (same); *Postnet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, No. 06-cv-00125-PSF, 2006 WL 1775599,

at *2 (D. Colo. June 26, 2006) (rejecting argument that a term is not conspicuous merely because it is

contained on penultimate page of contract, is not in distinct typeface, and does not have a

particularized caption summarizing its content).

The jury trial provisions in the RSA and Subscription Agreement were not just the same size

as other contractual provisions, but were highlighted by capitalized typeface.  "[T]here is no doubt"

that jury trial waivers in capital letters are "conspicuous in … appearance." *Moreno*, 2013 WL

2444720, at *3; *see also Tetra Fin. Grp., LLC v. Cell Tech Int'l, Inc.*, No. 2:08-cv-935-DAK-PMW, 2009

WL 3818373, at *4 (D. Utah Nov. 13, 2009) (enforcing jury trial waiver that was "capitalized, unlike

many other provisions of the Agreement, which draws sufficient attention to it to make it

conspicuous").

### C.   Plaintiffs are Sophisticated and Experienced Distressed Debt Investors Who Were Assisted by Legal and Financial Advisors.

Plaintiffs' sophistication and access to counsel also weigh in favor of enforcing the parties'

jury waiver.  Courts within this district have required only that the parties be "sufficiently

sophisticated to understand the meaning of the [contract]." *Postnet*, 2006 WL 1775599, at *3.  In

*Rocky Mountain*, for example, the district court enforced the parties' jury waiver even though the

moving party "may have been a larger more sophisticated business."   2007 WL 4268962, at *7.  It

was enough, the court found, that the party resisting enforcement had run several businesses,

including a real estate company and two gyms.  *Id.*

Plaintiffs cannot possibly dispute that they are sufficiently sophisticated to understand the

jury waiver they signed.  Plaintiffs are multi-billion dollar distressed debt funds, which had years of

investment experience in Quiznos.  (Compl. ¶¶ 13-14.)  Plaintiffs even represented in the RSA that

they had "such knowledge and experience in financial and business matters" that they were "capable

of evaluating the merits and risks" of entering into the restructuring transaction, and had "conducted

an independent review and analysis of the business and affairs of the Company" that they

considered "sufficient and reasonable" for purposes of entering into the transaction.  (Ex. 3 p. 8.)

Plaintiffs' status as experienced business entities weighs strongly in favor of enforcing the jury

waiver.  *See United States ex rel. Collins Plumbing, Inc. v. Turner-Penick Joint Venture,* No. 3:11-cv-2834-

GPC-MDD, 2013 U.S. Dist. LEXIS 141730, at *17 (S.D. Cal. Sept. 30, 2013) ("CCS's previous work

on complex and large-scale projects, its experience in the market, and its multi-million dollar annual

revenues support the conclusion that CCS had sufficient business and professional experience to

understand the jury waiver provision.").

Likewise, in agreeing to the jury waivers, Plaintiffs were advised by competent counsel.

Plaintiffs acknowledged in the RSA that they "had the opportunity to be represented by counsel in

connection with this Agreement and the transactions contemplated by this Agreement."  (Ex. 3 p.

18.)  Plaintiffs agreed that any rule of law "that would provide any Party with a defense to the

enforcement of the terms of this Agreement against such Party based upon lack of legal counsel,

shall have no application and is expressly waived." (*Id.*)  This factor thus weighs in favor of enforcing the jury waivers that Plaintiffs signed.

### D.   Plaintiffs Actively Negotiated the Terms of the Restructuring.

Plaintiffs' active involvement in negotiations over the terms of the restructuring documents supports enforcement of the jury waivers.  Even when a party lacks the opportunity to negotiate (for example, in the context of contracts of adhesion), courts within this district have been reluctant to dispense with jury waivers unless there was "compulsion in connection with … signing of the agreement." *Rocky Mountain*, 2007 WL 4268962, at \*7.  But here, Plaintiffs expressly allege they formed an *ad hoc* group to "consider potential structures for a comprehensive restructuring of the Company's existing obligations," and that the product of these "negotiations was the [restructuring] Transaction." (Compl. ¶ 59.)  Far from a contract of adhesion, the agreements effecting the restructuring transaction were actively negotiated among the parties and their counsel.  There is no basis for setting aside the jury waivers included in those agreements.

### E.   The Jury Waivers Are Not the Result of a Gross Disparity in Bargaining Power.

Finally, the jury waivers were negotiated between sophisticated commercial parties of relatively equal bargaining power.  Although jury waivers may be set aside due to "a gross disparity in bargaining power," *Telum*, 859 F.2d at 837, this extreme remedy requires far more than simply "unequal bargaining power." *Rocky Mountain*, 2007 WL 4268962, at \*7.  Rather, a gross disparity in bargaining power is understood to exist "only … when a party is forced to accept the terms of an agreement as written; the party is unable to simply walk away if the terms are unacceptable." *Oglesbee v. IndyMac Fin. Servs., Inc.*, 675 F. Supp. 2d 1155, 1158-59 (S.D. Fla. 2009).   Here, Plaintiffs were heavily involved in the negotiations leading to the restructuring and had every opportunity to "walk

away" and let Quiznos strike a different deal or file for bankruptcy.  Indeed, the out-of-court

restructuring only occurred because 100% of the lenders agreed to it.  (*See* Ex. 3 pp. 5, 6.)

In short, Plaintiffs knowingly agreed to waive a jury trial as to all claims related to the

restructuring transaction.  That waiver was the result of arms-length negotiations between

sophisticated parties and must be enforced.  Accordingly, the Court should strike the jury demand in

Plaintiffs' Complaint.

## II.   THE COURT SHOULD STRIKE PARAGRAPHS 48 AND 49 AND PORTIONS OF PARAGRAPHS 51 THROUGH 53 OF THE COMPLAINT UNDER RULE 12(F).

### A.   Legal Standard

Under Rule 12(f), the Court has "liberal discretion" to "strike from a pleading . . . any

redundant, immaterial, impertinent, or scandalous matter."  *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d

1059, 1063 (8th Cir. 2000); Fed. R. Civ. P. 12(f).  "For purposes of ruling on a motion to strike,

immaterial matter is defined as that which has no essential or important relationship to the claim for

relief, or a statement of unnecessary particulars in connection with that which is material."  *Penncro*

*Assocs. v. Sprint Corp.*, No. 04-2549-JWL-DJW, 2005 U.S. Dist. LEXIS 7119, at *4 (D. Kan. Apr. 25,

2005).  "Impertinent matter consists of statements that do not pertain, and are not necessary, to the

issues in question; while scandalous matter is that which improperly casts a derogatory light on

someone, most typically on a party to the action."  *Marceaux v. Lafayette Consol. Gov't*, No. 6:12-cv-

01532, 2012 U.S. Dist. LEXIS 150922, at *4 (W.D. La. Oct. 18, 2012) (citing C. Wright & A. Miller,

5C Fed. Prac. & Proc. 3d § 1382).  "The granting of a motion to strike scandalous matter is aimed,

in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or

giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally

are public documents and become generally available." *Id.* at \*4-5 (quoting C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1382).

"The Court may grant a motion to strike when (1) the allegations have no bearing on the controversy and (2) the movant can demonstrate prejudice caused by the allegations." *Holderness v. Birner Dental Mgmt. Servs., Inc.*, No. 12-CV-1391-WJM-MJW, 2013 U.S. Dist. LEXIS 22101, at \*3 (D. Colo. Feb. 19, 2013) (citing *Kimpton Hotel & Restaurant Group, LLC v. Monaco Inn, Inc.*, No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at \*1 (D. Colo. Jan. 11, 2008)).

## B. The Allegations Regarding Past Litigation Have No Bearing on the Controversy and Cause Prejudice to Defendants.

Plaintiffs' Complaint concerns an alleged "conspiracy" that supposedly began in January 2011 and culminated in the January 24, 2012 restructuring transaction. (Comp. ¶¶ 1-2.) Yet Plaintiffs' Complaint seeks to inject into the case unrelated litigation from nearly a decade earlier solely to cast Defendants in a derogatory light. (*See* Compl. ¶¶ 48-49.) This Court should strike those allegations as redundant, immaterial, impertinent and scandalous under Rule 12(f) to ensure this lawsuit, and the discovery associated with it, is focused on matters relevant to the claims and defenses at issue.

In paragraph 48, Plaintiffs allege that in 2001, a group of Quiznos investors—a group that did *not* include Plaintiffs—"filed a dissenters' rights complaint in Colorado, seeking a determination of the 'fair value' of their Quiznos stock. In determining the fair value, a Colorado state court found that the Schadens misrepresented the future projected growth of the Company in order to manipulate the share price in the going-private transaction." (Compl. ¶ 48.) In relevant part, Plaintiffs allege in paragraph 49 that "[t]he Schadens were found to have undervalued shares by

misrepresenting projected new franchise openings as a means to lower the value of shares and effectuate a less expensive buyout." (Compl. ¶ 49.)

The allegations in Paragraphs 48 and 49 relate to a litigation that took place more than ten years earlier and had nothing to do with Plaintiffs or the 2012 restructuring. Certainly, Plaintiffs cannot argue that projections about franchise openings in 2001 by the Schadens bear on financial projections by different defendants ten years later. *See* Fed. R. Evid. 404(b)(1). Discovery and litigation in this case should remain focused on the issues affecting the outcome. Since the Complaint does not include claims to recover for the alleged harms related to the 2001 litigation, there is no reason to include them. These allegations should be stricken. *See Kimpton Hotel & Rest. Group, LLC v. Monaco Inn, Inc.*, No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008) ("The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case.") (citation omitted); *see also Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983) (one of the purposes of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues").

## C.     The Allegations Regarding Defendants' Financial Condition Have No Bearing on the Controversy and Cause Prejudice to Defendants.

Similarly, Plaintiffs improperly seek to introduce allegations of certain Defendants' financial success and net worth derived from unrelated transactions and events solely to prejudice Defendants. The Court should strike three irrelevant allegations in the Complaint concerning certain Defendants' financial condition and net worth. In Paragraph 51, Plaintiffs allege that "the Schadens extracted $585 million out of the Company as a result of the sale…" (Compl. ¶ 51.) In Paragraph 52, Plaintiffs allege that "the Schadens' 2006 windfall was financed through saddling the

company with massive debt." (*Id.* ¶ 52.)  And in Paragraph 53, Plaintiffs allege: "After the Schadens

extracted their millions…"  (*Id.* ¶ 53.)

"As a general rule, it is error to admit evidence of a party's financial condition unless

necessary to determine the damages sustained." *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th

Cir. 1983); *see also Schrieber v. Federal Express Corp.*, No. 09-cv-128-JHP-PJC, 2010 U.S. Dist. LEXIS

25806, at \*12 (N.D. Okla. Mar. 18, 2010) ("evidence of [defendant's] financial condition is only

relevant at the punitive damages stage of the trial, if necessary").  Yet Plaintiffs' allegations in

Paragraphs 51-53 are *not* tethered to Plaintiffs' request for damages.  The allegations refer to a

transaction that took place in 2006 – five years before the start of the alleged conspiracy underlying

this case.  (Compl. ¶ 2.)  The 2006 transaction has no bearing on the controversy before this Court,

and Plaintiffs have not even attempted to tie the 2006 transaction to their claim for relief.

Nor could they.   The restructuring documents demonstrate that in the 2012 transaction,

Defendants forfeited their equity interest in the company and all but two Plaintiffs resigned their

positions as part of a corporate restructuring that transferred ownership to Plaintiffs.  Defendants

received no financial benefit from the 2012 restructuring.  Indeed, the only consideration they

received was a promise by Plaintiffs—a promise Plaintiffs now seek to repudiate—to release

Defendants from all claims arising from or in connection with the restructuring.

Perhaps to detract from the financial sacrifice made by Defendants in the 2012 transaction,

Plaintiffs seek to inject the 2006 transaction into the case, characterizing the Schadens' arms-length

sale with inflammatory words, such as "extracted" and "windfall."  These allegations reflect

Plaintiffs' attempt to impermissibly infuse immaterial and prejudicial facts related to certain

Defendants' financial resources into the Complaint.  *See Marceaux*, 2012 U.S. Dist. LEXIS 150922 at

11

*4-5 ("The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter…").  The amount of money certain Defendants obtained as a result of a transaction that took place in 2006 is no more relevant than the fact that Avenue founder Marc Lasry's net worth is estimated to be $1.8 billion.  Given that Plaintiffs' claims do not rest on alleged wrongdoing in the 2006 sale, those allegations are immaterial, impertinent, and scandalous, and should be stricken under Rule 12(f).

## CONCLUSION

For the foregoing reasons, the Court should strike Plaintiffs' jury demand from the Complaint, and should strike the following specific allegations in the Complaint as redundant, immaterial, impertinent and scandalous under Rule 12(f):

> ¶ 48: As a part of the 2001 return to private ownership, a group of Quiznos investors filed a dissenters' rights complaint in Colorado, seeking a determination of the "fair value" of their Quiznos stock.  In determining the fair value, a Colorado state court found that the Schadens misrepresented the future projected growth of the Company in order to manipulate the share price in the going-private transaction.

> ¶ 49: The Schadens were found to have undervalued shares by misrepresenting projected new franchise openings as a means to lower the value of shares and effectuate a less expensive buyout.  The Schadens projected an expansion of 85 new franchises by year-end, when, in fact, Quiznos sold 321 franchises.

> ¶ 51: While the Schadens extracted $585 million out of the Company as a result of the sale....

> ¶ 52 Thus, the Schadens' windfall was financed through saddling the Company with massive debt.

> ¶ 53 After the Schadens extracted their millions….

Dated:  October 3, 2014

Respectfully Submitted,

By:  s/ Christopher Lovrien
      Christopher Lovrien

Bruce S. Bennett
Nathaniel P. Garrett
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA  90071.2300
+1.213.489.3939 Telephone
+1.213.243.2539 Facsimile

Attorneys for Defendants
RICHARD F. SCHADEN, RICHARD E.
SCHADEN, FREDERICK H.
SCHADEN, GREG MACDONALD,
DENNIS SMYTHE, ANDREW R. LEE,
PATRICK E. MEYERS, JOHN M.
MOORE, THOMAS RYAN,
CONSUMER CAPITAL PARTNERS
LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Allen.Lanstra@skadden.com
al.chua@skadden.com
Logan.Wayne@skadden.com
rebecca.isomoto@skadden.com
Thomas.Marks@skadden.com
bbennett@jonesday.com
kfloyd@jonesday.com
cjlovrien@jonesday.com
eytran@jonesday.com
ngarrett@jonesday.com
vdragalin@jonesday.com
dwake@shb.com
hhiatt@shb.com
pheeren@shb.com
ssumpter@shb.com
jdailey@akingump.com
dromani@akingump.com
sbaldini@akingump.com
nymco@akingump.com

s/ Nathaniel P. Garrett
Nathaniel P. Garrett
Attorney for Defendants
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
+1.415.875.5731 Telephone
+1.415.875.5700 Facsimile

Attorneys for Defendants
GREG MACDONALD, DENNIS
SMYTHE