# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| Avenue Capital Management II, L.P. et al., | § | Case No. 1:14-cv-02031-PAB-KLM |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Richard F. Schaden, et al., | § | |
| Defendants. | § | JUDGE PHILIP A. BRIMMER |

## PLAINTIFFS' RESPONSE TO OFFICER DEFENDANTS' MOTION TO DISMISS (CM-ECF #26) COMPLAINT

### INTRODUCTION

The Officer Defendants' Motion to Dismiss (CM-ECF #26) ("Motion") must be denied.

**First**, the Assignment, Assumption and Release Agreement ("AARA") does not release, and explicitly excludes, claims based on unlawful acts like alleged here.  Further, federal securities and applicable state law also prohibit the waiver or release of the alleged intentional wrongful conduct.  Accordingly, the AARA does not save Defendants from their fraudulent acts.  **Second**, "securities" are at issue.  The LLC interests are investment contracts—and thus, "securities"—under federal securities laws.  Defendants' incorrect argument hinges on the misreading of a single distinguishable case.  **Third**, Plaintiffs' Section 10(b) claims are not barred by the statute of limitations.  Defendants mention, but then completely ignore, the Supreme Court's recent pronouncement in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), which rejects Defendants' argument.  It is Defendants'  burden to show that Plaintiffs discovered Defendants' fraud more than two years prior to filing this suit, which burden they do not and cannot meet.  **Fourth**, Defendants' reliance on the "bespeaks caution" doctrine is misplaced.  That doctrine does not excuse those who commit fraud with knowingly false projections or misleading statements

regarding present factual conditions.  **Fifth**, Defendants' "lack of specificity" argument fails because Plaintiffs alleged in detail Defendants' fraudulent scheme that misled Plaintiffs into investing over $150 million in cash and retiring millions of dollars in debt, supported by detailed allegations regarding the false projections and internal emails establishing Plaintiffs' knowledge of their falsity.  Notably, Defendants ignore the numerous omissions alleged in the Complaint.  As such, Defendants' reflexive "specificity" argument fails.[1]

## FACTUAL BACKGROUND

Quiznos is one of the world's largest restaurant franchisors.  Compl. ¶¶ 46-47.  Although Quiznos was once public, in 2001, the Company went private and reverted to the control of its founders, defendants Richard F. Schaden and Richard E. Schaden.  *Id.* ¶ 47.  In 2006, the Schadens sold a portion of their interest in Quiznos for $585 million and the Company entered into a $650 million loan facility, a $225 million loan facility, and a $75 million revolver.  *Id.* ¶ 51.  Quiznos' performance declined over time from 5,200 to 2,000 franchisee locations from 2007 to 2011, and EBITDA declined from $184 million to $99 million.  *Id.* ¶ 54.  These declines caused the Company to violate loan covenants and, in August 2011, the Company began discussing an alternative transaction.  *Id.* ¶¶ 56-61.

Before the Transaction, Quiznos was actively managed by Greg MacDonald, President and CEO, and Dennis Smythe, CFO ("Officer Defendants").   *Id.* ¶ 22.  Defendants conspired to defraud Plaintiffs by knowingly concealing, misrepresenting, and artificially inflating present facts and the projected gross profits, cash flow, future store counts, average unit volume ("AUV"), franchisee royalties, and related metrics in an effort to induce Plaintiffs to purchase

---

[1] For each of these same reasons, Plaintiffs have adequately alleged common law fraud.

equity in the Company, inject liquidity into the Company, and restructure debt that the Company owed to Plaintiffs. *Id.* ¶¶ 1, 66-77, 81, 83-91. Unbeknownst to Plaintiffs, internal debate raged about the misleading present facts and projections, but Defendants continued to use them "as a matter of strategy in dealing with the creditors." *Id.* ¶¶ 87-91. Plaintiffs entered into a transaction with the Company (the "Transaction"), investing more than $150 million cash and restructuring debt obligations including hundreds of millions in debt forgiveness.[2] *Id.* ¶ 15.

To assure Plaintiffs that Quiznos addressed operational concerns, Defendant MacDonald falsely told Plaintiffs that consultants McKinsey & Co. had reviewed and approved the viability of a brand re-launch and the financial projections. *Id.* ¶ 134. In fact, McKinsey had done only a minor review that did not analyze the changes. *Id.* Defendants <u>knew</u> that the operational changes that they had made would decrease store openings and increase store closures; cause a decline in royalty payments, gross revenue, and AUV growth; decrease the number of stores sold but not yet opened ("SNOs"); increase SNO terminations; and reduce cash flow. *Id.* ¶ 137. Yet they fraudulently hid this information from Plaintiffs. Even an internal projection model diverged materially from the projections shared with Plaintiffs. *Id.* ¶ 138. Indeed, just before the Transaction, Defendants internally and secretly acknowledged and were aware that they "didn't have [a] comprehensive model," which resulted in a "gap in projections for 2012." *Id.* ¶ 140. Defendants knew that the projections were false. *Id.* ¶¶ 144, 148-49.

The Transaction occurred in January 2012 with the execution of: (1) the Offering Memorandum; (2) the Restructuring Support Agreement; and (3) the Subscription Agreement.

---

[2] QCE Holding LLC was the parent entity in the Quiznos corporate structure and its Board controlled all the Quiznos entities, which had nearly the same officers. *Id.* ¶ 16-18.

*Id.* ¶ 68.  The parties concurrently entered into the AARA.  Garret Decl. Ex. 5.  Each <u>warranted</u> that it did not contain "any untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make statements therein, in light of the circumstances under which they are made, not misleading."  Compl. ¶ 151.  Defendants represented that the projections in the Transaction documents were based on true statements of fact, were intended to reflect the worst-case scenario, and the Transaction would improve Quiznos' liquidity position and franchise success.  *Id.* ¶¶ 155-56.  Defendants' misleading statements and financial projections gave the false impression that the Transaction would allow Quiznos to service its debt obligations and sustain its new capital structure.  *Id.* ¶¶ 2-8.  Defendants' fraud, however, was revealed with two-year variances that signaled the depth of the fraudulent scheme including: (1) store count down 22.2%; (2) store openings down 68%; (3) store closings up 90%; (4) revenue down 33.9%; and (5) AUV down 14.2%.  *Id.* ¶ 153.  By March 2014, the Company filed for bankruptcy and Plaintiffs had suffered losses.  *Id.* ¶ 163.

<u>**ARGUMENT AND AUTHORITIES**</u>

A complaint that alleges factual matter that, accepted as true, makes the plaintiff's "claim to relief . . . plausible on its face," survives a Rule 12(b)(6) motion to dismiss.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When presented with such a motion, the Court must assume that all properly-pled allegations are true.  *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 (10th Cir. 1992).

I.     <u>**DISPUTED - Plaintiffs' Claims Have Not Been Released Through The AARA**</u>

For efficiency, Plaintiffs adopt and incorporate Section I of their concurrently filed response to the Manager Defendants' Motion to Dismiss (CM-ECF #27), which demonstrates

that the AARA release does not bar their claims because: (1) the AARA explicitly excludes claims based on unlawful acts, and (2) federal securities and applicable state law prohibit the waiver or release of the alleged intentional wrongful conduct.  *See* Fed. R. Civ. P. 10(c).

## II.    DISPUTED - Plaintiffs State a Claim for Relief Under Section 10(b) and Rule 10b-5[3]

### A.    The LLC Interests in this Case are Investment Contracts and Therefore "Securities" Under Federal Securities Laws

Plaintiffs state a valid claim because the LLC interests at issue are "investment contracts," and thus "securities" under the Securities Exchange Act.

#### 1.    LLC Interests Are Not Categorically Excluded From the Definition Of "Investment Contract" As "Securities"

Courts reject the argument that LLC interests are categorically not "securities."   Whether LLC interests are securities is a fact-intensive inquiry on a case-by-case basis.  *See, e.g.*, *United States v. Leonard*, 529 F.3d 83, 89 (2d Cir. 2008) ("[B]ecause of the sheer diversity of LLCs, membership interests therein resist categorical classification."); *Cogniplex, Inc. v. Ross, L.L.C.*, No. 00 C 7463, 00 C 7933, 2001 WL 436210, *9 (N.D. Ill. Apr. 27, 2001) (flexibility is necessary in determining application of securities laws to LLC interests).  Due to the fact-intensive inquiry, courts often hold it to be improper to find at the dismissal stage whether particular LLC interests are "securities."  *See, e.g.*, *Uni-World Capital L.P. v. Preferred*

---

[3] A Section 10(b) claim includes "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317-18 (2011) (internal citation omitted).  Defendants challenge only whether there was a material misrepresentation or omission, *see* Mot. at 8-13, and, in attacking the common law fraud claim, whether there was reasonable reliance.  *See id.* at 14.  Plaintiffs have sufficiently pled all elements.

*Fragrance, Inc.*, No. 13 Civ. 7204, 2014 WL 3900565, *8 (S.D.N.Y. Aug. 8, 2014) (denying

motion to dismiss and noting discovery would benefit the issue).

### 2.   The LLC Interests Here Are "Investment Contracts" And Thus "Securities"

An LLC interest is considered an "investment contract" when it is: (1) an investment in a

common venture; (2) premised on a reasonable expectation of profits; and (3) derived from the

entrepreneurial or managerial efforts of others.  *Gilmore v. Gilmore*, No. 09 Civ. 6230, 2011 WL

3874880, *5 (S.D.N.Y. Sept. 1, 2011) (citing *SEC v. Howey Co.*, 328 U.S. 293 (1946)).

Defendants do not dispute either that the LLC interests here represent "investments in a common

venture" or are "premised on a reasonable expectation of profits."  They contest only whether

profits are derived from the entrepreneurial or managerial efforts of others.  *See* Mot. at 6.

There is no settled delineation of what it means for profits in an LLC to be "derived from

the entrepreneurial or managerial efforts of others."[4]  *Compare Gilmore*, 2011 WL 3874880, at

*5-6, *with Burnett v. Rowzee*, 2007 WL 2809769, *5 (C.D. Cal. Sept. 26, 2007).  Indeed,

Defendants' own case, *Great Lakes Chem. Corp. v. Monsanto*, notes that "[t]here is little caselaw

establishing guidelines for determining whether a member in an LLC is sufficiently passive that

he is dependent solely on the efforts of others for profits."  *Great Lakes*, 96 F. Supp. 2d 376, 391

(D. Del. 2000).  Rather, "economic reality is to govern over form" and courts closely examine

the facts in each case to determine whether the holder of an LLC interest expects profits from the

efforts of others.  *Affco Invest. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F. 3d 185, 190 (5th

---

[4] It is for this reason that this issue is more properly addressed later in the case.  *See, e.g.*, *Automated Teller Machine Advantage LLC v. Moore*, 2009 WL 243151, *4 (S.D.N.Y. Aug. 6, 2009) (holding that the issue of whether LLC interests were investment contracts could not be decided "at [the motion to dismiss] phase of the case when no discovery [had] occurred.").

Cir. 2010).  Courts have focused on several different factors, including: (1) whether the LLC is member-managed or manager-managed, *see, e.g.*, *Gilmore*, 2011 WL 3874880, at *5-6 (manager-managed LLC interests held securities; member-managed interests held not securities); and (2) whether the LLC agreement contains a provision limiting members' rights to manage day-to-day operations.  *See, e.g.*, *Burnett*, 2007 WL 2809769 at *5; *Venezia Amos, LLC v. Favret*, 2008 WL 410163, *8 (N.D. Fla. 2008).  Here, the LLC interests were manager-managed rather than member-managed and the officers—not its members—were responsible for day-to-day management.  Compl. ¶ 173.  Thus, the LLC interests here rely on profit to be derived from the entrepreneurial or managerial efforts of others.

Defendants, in an attempt to skirt an objective analysis under the governing authority, place undue reliance on *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376 (D. Del. 2000), which Defendants incorrectly claim involved LLC interests "materially indistinguishable" from those involved here.  *See* Motion at 6-7.  Defendants are wrong.  Relying on only a portion of *Great Lakes*, Defendants ignore the entirety of the analysis that <u>confirms</u> that the LLC interests in this case constitute "investment contracts."  Specifically, Defendants misrepresent that *Great Lakes* holds that the plaintiff's purchase of LLC interests did not qualify as an "investment transaction" based solely on the court's consideration that the (i) the LLC members had the power to remove any manager with or without cause; and (ii) the complaint alleged that the defendant "had the power to control the actions of the managers."  *Great Lakes*, 96 F. Supp. 2d at 391-92.  Defendants ignore that the *Great Lakes* court also considered that (iii) the LLC members had the power to dissolve the company; and (iv) the plaintiff—as the sole member of the LLC—had an undiluted power to remove the managers or dissolve the company at any time.

*Id.* Thus, Defendants not only incorrectly argue that *Great Lakes* applies and governs, Defendants also do not fairly, accurately or correctly apply the case to the facts alleged here.

A proper application of *Great Lakes*, as well as the case law more applicable to facts in this case, confirms that the LLC interests here are "investment contracts." As to the first factor, Defendants cite as determinative the power of QCE Parent LLC members to remove managers with or without cause. However, this factor alone is not enough to bring LLC interests outside the protections of federal securities laws. *See, e.g.*, *Gilmore*, 2011 WL 3874880, at *1, 5 (LLC interests held securities where members had right to elect and remove managers); *Burnett*, 2007 WL 2809769, at *5 (authority to remove manager did not establish members were in control or played a management role). The second factor, which Defendants ignore, works against Defendants' position. The QCE Parent LLC Agreement confirms that the managers—not the members—have authority to dissolve the LLC. *See* Dkt. 29-2 § 12.1(a). As for the third factor, whether the defendant had the power to control the actions of the managers, there is insufficient analysis in *Great Lakes* to determine whether the type of "control" alleged in *Great Lakes* is analogous to the control alleged in the Complaint. Moreover, it is unclear to what extent the *Great Lakes* court relied on this factor.[5] Here, the allegations regarding influence and control of the decision-making of QCE Holding center around the improper influence exerted by the Officer Defendants—not the proper exercise of their powers under the LLC agreement. *See, e.g.*, Compl. ¶ 185. Finally, the fourth factor, which Defendants also ignore in their brief, focused on

---

[5] The court merely noted that "Great Lakes' complaint avers that, prior to selling NSC, Monsanto and STI had the power to control the actions of the Managers, insofar as defendants allegedly prohibited NSC's management from speaking directly with Great Lakes regarding sales, sales forecasts, and customer orders." *Great Lakes*, 96 F. Supp. 2d at 392.

the fact that the investor was the ***sole owner*** of the LLC with the undiluted power to affect the management and dissolution of the company. *See Great Lakes*, 96 F. Supp. 2d at 392.[6]  The case at bar does not involve this same kind of singular domination over the affairs of the LLC.

Thus, far from being "materially indistinguishable," the LLC interests here actually share very little in common with those at issue in *Great Lakes*.  Indeed, this case is more like *Gilmore* and *Burnett*, where members had certain rights such as the right to elect and appoint managers but day-to-day operations were explicitly left to the discretion of managers. *See Gilmore*, 2011 WL 3874880, at *1, 5; *Burnett*, 2007 WL 2809769, at *5.  As in those cases, the LLC interests in this case are investment contracts subject to the protections of the federal securities laws.

**B.      Plaintiffs' Section 10(b) Claims are Not Barred by the Statute of Limitations**

Defendants have not, and cannot, carry their burden of showing that Plaintiffs' claims are barred by the statute of limitations.  Mot. at 7.  The limitations period is the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation."  28 U.S.C. § 1658(b).  Defendants incorrectly maintain that because two years have passed since the Transaction, it is Plaintiffs' burden to prove the timeliness of suit—this is simply wrong.

In *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), which addressed the application of the statute-of-limitations "discovery rule" in the context of 28 U.S.C. § 1658(b), the Supreme Court relied on the long-established principle that a <u>defendant</u> bears the burden of showing (among other things) when a reasonably diligent plaintiff would have discovered "the facts constituting the violation."  *Merck & Co.*, 559 U.S. at 654.

---

[6] Indeed, the case *Great Lakes* relies upon similarly involved a member with almost the entire voting interest in the company.  *See id.*; *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 154 (3d Cir. 1997) (investor in limited partnership held over 98% of the LP interests).

Despite this recent holding from the highest Court, Defendants cite a handful of Tenth Circuit cases (decided nearly **two decades before** *Merck*) suggesting that a securities <u>plaintiff</u> bears the burden of pleading and proving facts showing his claim is timely.  *See* Mot. at 7-8.  Not only are such cases against the great weight of authority established in other Circuits, they are no longer good law as a result of *Merck*.  Indeed, the line of cases cited by Defendants have been criticized within the Tenth Circuit since the *Merck* decision.[7]

Thus, Defendants bear the "heavy burden" of proving the untimeliness of Plaintiffs' action.  Defendants have failed to do so, as they merely point to uncertain timeframes in the Complaint.  *See* Mot. at 8.  Accordingly, Defendants' motion on the basis of the statute of limitations fails as a matter of law.[8]

---

[7] *See, e.g., Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc.*, 900 F. Supp. 2d 1222, 1243-44 (D. Kan. 2012) ("[t]he requirement to plead and prove facts relating to timeliness has been criticized by other circuit courts in securities law actions"); *Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F. Supp. 2d 1113, 1120-21 (D. Kan. 2013) (same); *see also Hawaii Ironworkers Annuity Trust Fund v. Cole*, No. 3:10CV371, 2011 WL 1257756, *14-15 (N.D. Ohio Mar. 31, 2011) (burden of proving discovery falls "squarely on the shoulders of the defendant"); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 384 (S.D. Tex. 2011) (defendants bear burden to establish "inquiry notice" and "determination is often inappropriate for resolution on a motion to dismiss").

[8] Defendants assert that Plaintiffs should have known of their alleged fraud immediately after the Transaction because of their access to inside information after the Transaction. However, Defendants refuse to acknowledge the very nature of a fraudulent scheme and conspiracy.  Namely, the intent and design of the perpetrators to consciously and purposefully act *secretly* and to *hide* the trail of their misconduct so that others will *never* find it.  *See, e.g.*, *Merck*, 559 U.S. at 1973–94 (in the context of securities fraud, "a defendants' deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded" and thus that the "statute of limitations does not begin to run until the fraud is *discovered*. . . .").  Instead, Defendants casually suggest that—the day after the Transaction—Plaintiffs should have immediately used their access to the Company's information to begin investigating potential fraudulent acts by Defendants and they were not permitted to assume that Defendants had truthfully made the warranties and representations in the parties' agreements.  Under such theory, Plaintiffs were unknowingly playing a timed game of "hide and go seek."  But that is not

**C.    The Bespeaks Caution Doctrine Does Not Protect Defendants from Liability Where They Are Alleged to Have Committed Intentional Fraud**

Knowing that the "safe harbor" protections of the PSLRA for forward-looking statements does not apply, Defendants instead rely on the common-law "bespeaks caution" doctrine to claim that their fraudulent statements and projections are not actionable.  Mot. at 8; Compl. ¶¶ 165-67.  "Not every risk disclosure will be sufficient to immunize statements relating to the disclosure; rather, 'the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions . . . which the plaintiffs challenge.'"  *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1120 (10th Cir. 1997) (citation omitted).  The bespeaks caution doctrine stands for the "'unremarkable proposition that statements must be analyzed in context' when determining whether or not they are materially misleading."  *Id.*  (citation omitted).  The bespeaks caution doctrine applies only to affirmative, forward-looking statements, and it does not apply to misleading statements concerning or based on "present factual conditions." *Schaffer v. Evolving Systems, Inc.*, 29 F. Supp. 2d 1213 (D. Colo. 1998) (denying motion to dismiss because bespeaks caution doctrine is inapplicable to present factual misrepresentation).

Many of the misleading statements made by Defendants are "present factual conditions." *Id.*  For example, the projections rely on misstated performance data to project future performance data.  Indeed, the projections significantly diverged from internal reporting models, using undisclosed different and misstated inputs to artificially inflate the projections, with one Senior Vice President even noting that there were "lots of spots where assertions we (in the royal

---

how the discovery rule operates.  *See id.* at 1798 ("[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.").

sense) made won't stand up to the people asking for supporting data."  Compl. ¶¶ 93, 138.  In an

another example of misstatements, it was internally noted that the "Gap caused by using the

incorrect Rev as a % of SWS and GP % in the corporate finance model.  Accidentally used

months that did not represent the current run rate."  Compl. ¶ 122.  Another person commented

that he would estimate the probability at hitting the projections at less than 5%, information

which was hid from Plaintiffs.  Compl. ¶ 97.  These underlying factual inputs concern <u>present

facts, events, and conditions</u>, not predictions of future success.  Moreover, when considered in

context, Defendants' statements become even more misleading because Defendants concealed

divergent internal projections and instructed employees to conceal any deviation.  Compl. ¶¶ 78-

140.  Defendants failed to warn Plaintiffs that the projections they were currently presenting

were unsupported by the underlying facts.  *See, e.g., In re Prudential Sec. Inc. Ltd. P'Ships

Litig.*, 930 F. Supp. 68, 71-72 (S.D.N.Y. 1996) (cautionary language does not protect material

misstatements or omissions that are knowingly false when made).  Because Defendants

knowingly concealed that their projections and the facts upon which they based the projections

were false, the bespeaks caution doctrine does not excuse their fraud as a matter of law.[9]

### D.   Plaintiffs Allege Securities Fraud with Specificity

Defendants mischaracterize the Complaint as alleging only three misstatements: (1)

projections; (2) representations regarding improved liquidity position; and (3) representations

---

[9] *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 514 (S.D.N.Y. 2013) (denying motion to dismiss where internal projections diverged from external projections and the Company had access to existing negative factors that would impact the projections); *City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F. Supp. 2d 277 (S.D.N.Y. 2013) (same); *City of Pontiac General Employees' Retirement Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359 (S.D.N.Y. 2012) (same).

regarding the re-branding program, pointing to a single paragraph of a 205 paragraph complaint. The detailed Complaint plainly tells a different story. Plaintiffs allege, in detail, a *fraudulent scheme* whereby Defendants misled Plaintiffs into investing over $150 million cash and retiring millions of dollars of debt. Compl. ¶¶ 78-149. This is separately actionable pursuant to Rule 10b-5(a) & (c). *See* 17 C.F.R. § 240.10b-5(a), (c) (2014). In addition, Plaintiffs outline numerous *omissions* associated with statements and representations regarding store growth and closings, royalty payments, gross revenue, AUV growth, SNO count, cash flow, and other key metrics. Compl. ¶ 149. For these reasons, Defendants' reflexive argument is baseless.

Defendants are incorrect about even the two statements identified in their argument. Mot. at 12-13. The Complaint adequately alleges the reasons why the two statements are misleading. First, Defendants represented that "[a]s a result of the Restructuring Transactions, we will reduce our indebtedness, improve our liquidity position and enhance our capital levels while providing additional resources to execute our business strategies." Compl. ¶ 156(a). This is false because the Company faced an undisclosed liquidity squeeze in 2012, evidenced by the substantial difference between its projected level of cash and cash equivalents (approximately $35.3 million) and its actual results ($15.2 million)—a difference of 59.8%. A difference of this magnitude demonstrates that the Company knew (or, at a minimum, was severely reckless in not knowing) that the liquidity position would not be improved and, once Defendants chose to address liquidity in its statements to Plaintiffs, Defendants could not withhold critically important information about the same subjects. *Grossman*, 120 F.3d at 1125; *Kapur v. USANA Health Sciences, Inc.*, 2008 WL 2901705, *13 (D. Utah July 23, 2008).

The statements regarding the rebranding program were also misleading and fraudulent. Defendants represented that, "The intent of [the Company's re-branding] program is to increase the quality of our products and customer experience as well as to attract additional customers into our restaurants, ultimately leading to higher franchise owner AUVs as well as royalties and food distribution revenue for the Company." Compl. ¶ 156. Other statements included addressing "a positive impact to overall AUVs and other key operating metrics" and that "AUVs are expected to begin to grow each year throughout the Projection Period." *Id.* ¶ 156. As Plaintiffs allege, the reality was that Defendants knew that the operational changes would "squeeze" franchise profitability. *Id.* ¶ 121. As one executive vice president noted, "store closures" would be a "visible" and a direct result of the Company's decision to pass commodity price increases along to the franchisees. *Id.* ¶ 112. Defendants' statements cannot be excused as mere opinions or puffery. The "Supreme Court in *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1093-94 (1991), made it quite clear that a statement as to beliefs or opinions . . . may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 (10th Cir. 1997).[10] Reading the Complaint's allegations in Plaintiffs' favor, it is simply not plausible to claim that the information misstated was so vague that "reasonable investors [would] not rely on them in making investment decisions." *Grossman*, 120 F.3d at 1119.

---

[10] *See also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992) ("adequate," "stable," "good," and "high" actionable); *In re Keyspan Sec. Litig.*, 2003 WL 21981806, at *17 (E.D.N.Y. 2003) (optimistic statements actionable where complaint permitted an inference defendants knew statements misrepresented existing facts); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 319 (E.D.N.Y. 2002) ("[P]uffery is innocuous only if the company's disclosures [are not] inconsistent with current data, that is, that the company has some legitimate reasoning to be optimistic").

### III.   Plaintiffs State a Claim for Common Law Fraud

Plaintiffs allege all the elements of the New York common law fraud claim, which are: (i) a material misrepresentation of a fact, (ii) knowledge of its falsity, (iii) an intent to induce reliance, (iv) justifiable reliance by the plaintiff, and (v) damages. *Eurycleia Partners, LP v. Seward & Kissel*, LLP, 12 N.Y.3d 553, 559 (2009).  The Complaint alleges reasonable reliance. The cautionary language in the Offering Memorandum refers to future, contingent events; it does not caution that Defendants used false projections divergent from internal projections.  As explained above, the alleged representations are not puffery.

### CONCLUSION

For the foregoing reasons, Defendants' motion should be rejected.[11]

Dated: October 24, 2014

/s/ Jeffery A. Dailey
Jeffery A. Dailey
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Telephone: (215) 965-1200
Attorneys for Avenue Capital Management II,
L.P. *et al.*

/s/ Allen L. Lanstra
Allen L. Lanstra
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Attorneys for Fortress Investment Group, LLC
*et al.*

---

[11] The allegations in the Complaint should be upheld.  Should the Court disagree, it would be appropriate for a dismissal to include leave to amend.  *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Colorado, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

<u>*/s/ Jeffery A. Dailey*                                    </u>
Jeffery A. Dailey